IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EAGLE COFFEE COMPANY, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. L-09-2585 |
| EAGLE COFFEE INTERNATIONAL, INC., | * | |
| Defendant. | * | |
| | * | |

******

## **MEMORANDUM**

This is a trademark infringement case. Eagle Coffee Company, Inc. ("Eagle Coffee Company") alleges that it is the owner of the registered trademark "EAGLE COFFEE." In a letter dated April 2, 2009, Eagle Coffee Company informed Eagle Coffee International, Inc. ("International") that International was infringing on Eagle Coffee Company's registered trademark by using the mark on products and a website. International continued to use the mark. Therefore, on October 1, 2009, Eagle Coffee Company filed a trademark infringement suit against International in this Court for the unconsented-to use of its registered mark EAGLE COFFEE.

Now pending is International's motion to dismiss Eagle Coffee Company's complaint for lack of personal jurisdiction and for insufficient service of process. International's motion to

dismiss for insufficient service of process has been rendered moot.[1]  Accordingly, the Court will only address International's contention that this Court lacks personal jurisdiction over it.  Because the issues are adequately addressed in the briefs, no hearing is necessary.  See Local Rule 105.6 (D. Md. 2009).

This motion tests whether a web-vendor can be sued in any jurisdiction where a customer may reside.  The answer, in short, is no.  A web-vendor's activities in a particular jurisdiction must still withstand a traditional personal jurisdiction analysis before it can be haled into court on account of those activities.  For the reasons stated below, International's activities in Maryland do not withstand such an analysis.  Accordingly, the Court lacks personal jurisdiction over International.  In a Letter Order of even date, the Court informed the parties that it will transfer the case to an appropriate jurisdiction unless a party objects, in which case the matter will be dismissed without prejudice.  An Order memorializing the result shall follow in due course.

**I.   Factual Background**

Eagle Coffee Company, a Maryland corporation located in Baltimore, Maryland, states that it is the sole owner of United States Registered Trademark No. 3,520,126 for EAGLE COFFEE.  Eagle Coffee Company has used this mark in commerce since 1921.  Eagle Coffee Company argues in its complaint that the "mark covers roasted coffee beans and ground coffee in International Class 30; and online retail store services and distributorship services for coffee,

---

[1] Eagle Coffee Company served process on Eagle Coffee International via "certified mail" on October 8, 2009. According to Federal Rule of Civil Procedure 4(h)(1)(A) and Maryland Rule 2-121(a), service by certified mail is only effective if the mail is sent via "Restricted Delivery."  Eagle Coffee Company did not send the summons and complaint via restricted delivery.  Eagle Coffee International filed its motion to dismiss on November 12, 2009, which alerted Eagle Coffee Company to its service error.  On November 16, 2009, well within the 120 day requirement established by Federal Rule of Civil Procedure 4(m), Eagle Coffee Company served the summons and complaint on International via certified mail with restricted delivery thus resolving the issue.

tea, syrups, coffee equipment, and gourmet products in International Class 35." Paper No. 1, p. 2.

International, a New York corporation and located solely in Carmel, New York, sells fresh roasted coffees, teas, accessories, and equipment. The small business has supplied these products since 1983. Customers may read descriptions of the company and its products and purchase those products online via its website, www.eaglecoffee.net. The website has been operational since 2005. International uses the phrase "Eagle Coffee" on its website and on some of its products.

In its motion to dismiss, International contends that it does not have sufficient contacts with Maryland to support personal jurisdiction over it in this Court. To the contrary, Eagle Coffee Company argues that International is subject to suit in Maryland. Specifically, Eagle Coffee Company argues that International is conducting ongoing business with Marylanders, as evidenced by its seven Maryland customers and its use of the phrase "please come again" in confirmatory emails following each purchase. Eagle Coffee Company also points to a telephone call placed by International to one Maryland customer after he placed an order on International's website.[2] Last, Eagle Coffee Company argues that International has purposefully availed itself of conducting business in Maryland by delivering its products via a delivery agent.[3]

## II. Standard of Review

When a jurisdictional challenge is raised, the burden is on the plaintiff to prove that the Court may exercise jurisdiction over a nonresident defendant. If the Court forgoes an evidentiary hearing, the plaintiff's burden is "simply to make a prima facie showing of a

---

[2] An International representative confirmed the customer's order and verified that he did not intend to order from the Eagle Coffee located in Baltimore.
[3] Eagle Coffee Company also notes that International could avail itself of the Maryland courts if a Maryland customer refused to pay for the products he or she ordered.

sufficient jurisdictional basis in order to survive the jurisdictional challenge." Baker & Kerr, Inc. v. Brennan, 26 F. Supp. 2d 767, 769 (D. Md. 2000) (citations omitted). In determining the issue, a reviewing court must construe the pleadings, and draw all reasonable inferences, in favor of the plaintiff. Id.

**III.     Analysis**

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. Pro. 4(k)(1)(A); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). A district court must satisfy two conditions in order to assert personal jurisdiction over a nonresident defendant: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute, and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. Christian Science Bd. of Directors of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). It is well-settled that the Maryland long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mohamed v. Michael, 279 Md. 653, 657 (1977)). Accordingly, the statutory and constitutional inquiries merge, and this Court need only ask whether the exercise of jurisdiction violates due process. Id.

A court's exercise of jurisdiction over a nonresident defendant satisfies due process if the defendant has "minimum contacts" with the forum such that the defendant can reasonably anticipate being required to defend its interests there. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant's contacts with a state may result in either general or specific jurisdiction over the defendant. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984); Carefirst, 334 F.3d at 397.

General jurisdiction results when a defendant's activities in the state are "continuous and systematic" but nevertheless unrelated to the claims at issue. Helicopteros, 466 U.S. at 418; Carefirst, 334 F.3d at 397. Here, Eagle Coffee Company has not alleged that International has engaged in continuous and systematic activities in Maryland. Eagle Coffee Company has also not opposed International's contention that it is not subject to general personal jurisdiction in Maryland. Accordingly, if this Court is to have jurisdiction over International, such jurisdiction must fall within the specific jurisdiction category.

In order to assert specific jurisdiction over a nonresident defendant, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state, (2) whether the plaintiff's claims arise out of those activities directed at the state, and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst, 334 F.3d at 397 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002)). The Court must consider the quality and nature of the Maryland contacts, not just their number. Id. "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Id. (citing Nichols v. G.D. Searle & Co., 783 F. Supp. 233, 238 (D. Md. 1992), aff'd, 991 F.2d 1195 (4th Cir. 1993)).

It is undisputed that International has no physical presence in Maryland. It has no property, employees, or registered agent in Maryland. It is also undisputed that International is not registered to do business in Maryland, files no Maryland tax returns, and has no Maryland bank accounts. The disputed contacts arise from International's website, which is freely

5

available via the internet to Maryland residents, and the sale of its products to seven Maryland residents since 1983.[4]

In Zippo Manufacturing Co. v. Zippo Dot Com, Inc., the District Court for the Western District of Pennsylvania developed a "sliding scale" test to determine when electronic contacts with a state give rise to specific jurisdiction. 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). It stated that personal jurisdiction is appropriate over businesses "clearly doing business over the Internet" by entering "into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet . . . ." Id. At the other end of the spectrum are "passive" websites that merely make information available to users in foreign jurisdictions and are thus not subject to personal jurisdiction. Id. In the middle are websites that are both informative and allow for exchanges with the host. Personal jurisdiction in these instances is "determined by examining the level of interactivity and commercial nature of the exchange of information . . . ." Id.

As this Court has stated, the Zippo model does not supersede the traditional personal jurisdiction analysis, it merely compliments it. See Shamsuddin v. Vitamin Research Products, 346 F. Supp. 2d 804, 811 (D. Md. 2004) ("The Zippo court did not declare that personal jurisdiction depends on the characteristics of a defendant's website, to the exclusion of traditional jurisdictional factors."). Accordingly, this Court will follow the standard articulated by the United States Court of Appeals for the Fourth Circuit in ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). In that case, the Fourth Circuit "adopt[ed] and adapt[ed]" the Zippo model, concluding

---

[4] The President and Chief Executive Officer of International, Daniel Gagné, avers that International's only contact with Maryland in over 25 years has been the sale of its products to seven Maryland customers since 2007. Paper No. 10, ex. 1, p. 2. Gagné also notes that, in combination, these seven sales total less than $2,000.00 and represent less than 0.1% of International's sales since 2007. Id.

> that a State may, consistent with due process, exercise judicial power over a person outside the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Id. at 714.

Construing the complaint in the light most favorable to the plaintiff, Eagle Coffee Company has alleged that International directed electronic activity into Maryland by using its website to advertise and offer its products for sale to Maryland customers, with the manifest intent of engaging Maryland customers in sales transactions, and that the trademark infringement claim arises out of the activities in Maryland. Despite these allegations, this Court is not satisfied that Eagle Coffee Company has established sufficient minimum contacts with Maryland such that International would reasonably anticipate being haled into court here.

International has not purposefully directed its activities, electronic or otherwise, at Maryland residents. First, nothing on International's website suggests that it intended to target the residents of Maryland (or any state) more than residents of any other state. Although International purposefully decided to sell its products online, this decision "cannot demonstrate that [it] took actions purposefully directed toward Maryland specifically." Shamsuddin, 346 F. Supp. 2d at 815.[5]

Second, the sale of its products to seven Maryland customers does not support the contention that International directed its activities at Maryland residents. Eagle Coffee Company asserts that International targeted Maryland residents by conducting business with seven

---

[5] In Shamsuddin v. Vitamin Research Products, the owner of a pharmaceutical patent sued a dietary supplement vendor for patent infringement. The dietary supplement vendor offered a similar product for sale on its website and in its mail-order catalog. Shamsuddin filed suit in this Court and the defendant moved to dismiss for lack of personal jurisdiction. This Court held that the existence of defendant's website and two sales to Maryland customers were insufficient to prove that the defendant purposefully directed its activities at Maryland residents and accordingly determined that it lacked personal jurisdiction over the defendant. 346 F. Supp. 2d, 804, 817 (D. Md. 2004).

customers, encouraging those customers to "please come again," placing one confirmatory phone call, and utilizing a nationwide delivery service to send products to Maryland customers. International contends that these contacts are at most *de minimus* and cannot be considered deliberate.  As the Supreme Court has noted, "isolated" occurrences significantly diminish the reasonable foreseeability of litigation in a particular forum.  Burger King Corp. v. Rudzewick, 471 U.S. 462, 476 n.18 (1985).  This Court is not convinced that seven customers in a 25-plus year period (although all occurring within the past two years), and the attendant interactions associated with fulfilling those customers' orders, can be considered anything more than isolated occurrences.  As such, these isolated occurrences do not show that International "engaged in significant activities within" Maryland or that it "created 'continuing obligations' between [itself] and residents of [Maryland]."  Id. at 475–76 (citations omitted).

Accordingly, in the instant case, "[a]sserting personal jurisdiction over [International] on the basis of its isolated sales and interactive website would ignore the constitutional requirements of deliberate, rather than merely foreseeable, contacts."  Shamsuddin, 346 F. Supp. 2d at 814.  Indeed, the facts "by themselves do not evidence purposeful availment or create a constitutionally sufficient 'substantial connection' with Maryland."  Id. at 814 (citing Carefirst, 334 F.3d 390).  Because the Court finds that International did not purposefully direct its activities at Maryland residents, the Court need not examine the remaining two prongs of the specific jurisdiction test.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that it does not have personal jurisdiction over Defendant International. In due course, an Order memorializing whether this case is dismissed without prejudice or transferred to an appropriate jurisdiction shall be entered.

Dated this 4th day of February, 2010.

/s/
Benson Everett Legg
United States District Judge